# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **CARLA G. MATTSON AND JAMES E.** | ) |
| **MATTSON TRUST,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL ACTION 23-0474-WS-MU** |
| | ) |
| **RAHMEEN FARUDI, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This matter is before the Court on the motion of defendant Nationwide Insurance ("Nationwide")[1] for judgment on the pleadings. (Doc. 29). The plaintiff has filed a response and Nationwide a reply, (Docs. 31, 32), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be granted.

## BACKGROUND

According to the complaint, the plaintiff is the owner of certain real property ("the Property") in Fruitdale, Alabama, which it leased to several other defendants (collectively, "Farudi" or "the Farudi defendants"). The lease ("the Lease") required Farudi to maintain property insurance and to designate the plaintiff as an additional named insured. Farudi bound through Nationwide a policy ("the Policy") of property damage insurance which named the plaintiff as a certificate holder and an additional insured. The Property then experienced catastrophic damage in a weather event. Farudi submitted a claim, which Nationwide honored, paying proceeds only to Farudi, not to the

---

[1] This defendant refers to itself as "Scottsdale Insurance Company" but, as the Court has previously noted, "[t]he complaint, until and unless amended, governs the naming of the parties." (Doc. 10 at 2 n.3).

plaintiff.  Farudi pocketed most of the insurance proceeds without making proper repairs to the Property.  (Doc. 1-2 at 10-12).

Count I alleges that Nationwide breached the Lease.  Count II alleges that Nationwide breached an express or implied agreement under the Policy to remit insurance proceeds to the plaintiff.  Count IV alleges that Nationwide negligently or wantonly breached a duty owed to the plaintiff by paying proceeds to Farudi rather than to the plaintiff.  Count VI alleges that Nationwide and Farudi conspired to defraud the plaintiff by having Farudi's claim approved and the proceeds paid to Farudi rather than to the plaintiff.  (Doc. 1-2 at 12-15).

Nationwide seeks dismissal of all claims asserted against it.

## DISCUSSION

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The plaintiff argues that Nationwide's motion is premature because the deadline established by the Magistrate Judge's Rule 16(b) scheduling order for seeking leave to amend the pleadings has not yet arrived.  (Doc. 31 at 8).  For purposes of Rule 12(c), however, the pleadings are closed once an answer to the complaint (or an answer to any counterclaim) is filed.  *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1339 n.10 (11th Cir. 2014).  Nationwide and Farudi have answered without filing any counterclaim or crossclaim, (Docs. 4, 11), and the plaintiff does not argue that the pleadings are not closed under the governing standard.

"A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)."  *Samara v. Taylor*, 38 F.4th 141, 152 (11th Cir. 2022) (internal quotes omitted).  "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts."  *Cunningham v. District Attorney's Office*, 592 F.3d 1237, 1255 (11th Cir. 2010) (internal quotes omitted).

Nationwide's motion relies on the Lease, the Policy, and the certificate of insurance ("the Certificate").  (Docs. 1-5, 1-6, 29-1).  Because the complaint does not

2

attach these documents as exhibits, they are not part of the complaint pursuant to Rule 10(c).  However, the Court may consider these documents without converting Nationwide's motion into one for summary judgment if they are "central to the plaintiff's claim" and "undisputed," that is, if "the authenticity of the document[s] is not challenged."  *Day v. Taylor*, 400 F.3d 1271, 1276 (11th Cir. 2005).  That test is met here.  The complaint makes these documents the centerpiece of the plaintiff's claims, alleging that:  Nationwide breached the Lease; Nationwide breached an agreement within the Policy; and Nationwide breached a duty based in part on the Certificate.  (Doc. 1-2 at 3-5).  The documents are thus central to the plaintiff's claims,[2] and the plaintiff does not question their authenticity.  Indeed, the plaintiff neither objects to the Court's consideration of these documents nor asks the Court to convert Nationwide's motion into one for summary judgment.

 Ordinarily, "[w]e accept all the facts in the complaint as true and view them in the light most favorable to the nonmoving party."  *Cunningham*, 592 F.3d at 1255.  However, "[o]ur duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of conclusory allegations."  *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).  "Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."  *Id*. at 1206.  "The *Griffin* principle applies if the exhibits plainly show that the complaint's allegations are untrue by providing specific factual details that foreclose recovery as a matter of law."  *Renfroe v. Nationstar Mortgage, LLC*, 822 F.3d 1241, 1245 (11th Cir. 2016).  Nationwide invokes this principle, (Doc. 29 at 4-5), and the plaintiff does not challenge its application here.

---

[2] *See, e.g., Day*, 400 F.3d at 1276 (documents are central when they "are a necessary part of [the plaintiff's] effort to make out a claim").

## I.  Breach of Lease.

"This Lease shall be governed by the laws of the State of Alabama."  (Doc. 1-5 at 11).  Nationwide asserts that Alabama law governs Count I, (Doc. 29 at 6), and the plaintiff does not disagree.

An essential element of a claim for breach of contract under Alabama is a "valid contract between the parties."  *NSH Corp. v. City of Calera*, __ So. 3d __, 2024 WL 1223810 *4 (Ala. 2024); *accord Childs v. Pommer*, 348 So. 3d 379, 387 (Ala. 2021) (a "valid contract binding the parties" is an essential element of a claim for breach of contract) (internal quotes omitted).  Thus, only a party to a contract may be successfully sued for breach of the contract.  *Roland v. Cooper*, 768 So. 2d 400, 404 (Ala. Civ. App. 2000) ("Cooper was not a party to the sales contract, so he could not be sued for breach of that contract …."); *accord Pate v. Rollison Logging Equipment, Inc*., 628 So. 2d 337, 343 (Ala. 1993) ("Even if considered a broker or an agent, Rollison was not a party to the insurance contracts and, therefore, could not be liable for breach of those contracts."); *Ligon Furniture Co. v. O.M. Hughes Insurance, Inc.*, 551 So. 2d 283, 285 (Ala. 1989) ("The undisputed evidence reveals that [the defendants] were not parties to [the insurance contract].  Thus, the trial court properly entered summary judgment on the claim alleging a breach of the insurance contract.").

The complaint does not allege that Nationwide was a party to the Lease.  On the contrary, it alleges that the contracting parties were the plaintiff and one of the Farudi defendants ("Taruma").  (Doc. 1-2 at 10).  The Lease expressly identifies the only lessee as Taruma, (Doc. 1-5 at 2, 11), and the Lease is signed only by Taruma's principal.  (*Id*. at 12).  The Lease nowhere mentions Nationwide.  The complaint alleges that Taruma assigned its rights under the Lease to another Farudi defendant, but it does not allege that Nationwide ever became an assignee.  On the contrary, the complaint confines the universe of lessees to the Farudi defendants.  (*Id*. at 13).

The plaintiff ignores the foregoing.  Its only effort to salvage Count I is to assert that Nationwide "was aware" of obligations imposed by the Lease on the lessees.  (Doc.

4

31 at 7).  A third party's awareness of the contractual duties of a contracting party obviously does not make the third party a contracting party.

In summary, Nationwide's motion for judgment on the pleadings as to Count I is due to be granted.

## II.  Breach of Policy.

The parties agree on the test for determining what law governs Count II, but they disagree as to which state satisfies that test.  Nationwide argues that, because Taruma's address on the Policy's declarations page is a California address, "the logical conclusion" is that the Policy was issued and delivered in California.  (Doc. 29 at 6; Doc. 32 at 4). The plaintiff says the Policy "[p]resumably" was received and accepted in Alabama, because that is where the Property is located and where the Farudi defendants were operating.  (Doc. 31 at 4).  Both arguments appear reasonable, but the Court cannot resolve the issue on the present, fact-free record.

Count II alleges that the plaintiff "was an 'also named insured' on the [Policy] with the expressed or implied agreement that the insurer would remit any proceeds for damages to [the Property] to [the plaintiff] as the owner of [the Property]" and that Nationwide "breached that agreement by remitting the proceeds from the insurance claim only to [the Farudi defendants] to the exclusion of" the plaintiff.  (Doc. 1-2 at 13).

Nationwide argues that the Policy negates the allegation that the plaintiff was a named insured under the Policy.  (Doc. 29 at 2, 10).  The Policy's declarations page identifies the "Named Insured" as "Taruma LLC dba:  Bang II Jealous Devil."  (Doc. 1-6 at 9).  The property form at issue in this lawsuit states that the terms "you" and "your" within the form "refer to the Named Insured shown in the Declarations," (*id*. at 77), that is, to Taruma.  A number of endorsements and other pages identify the Named Insured as "Taruma LLC; Taruma Ardmore LLC," (*id*. at 174-76, 179-80, 182-84, 186-90), but neither they nor anything else in the Policy identifies or acknowledges the plaintiff in any way.

5

Nationwide argues that the Policy also negates the plaintiff's status as an additional insured. (Doc. 29 at 2, 10). The Policy's sole identification of additional insureds modifies only the commercial general liability form (not the property form), and it identifies only "Bang Equipment, LLC dba: AI Natural Energy" ("Bang") as an additional insured. (Doc. 1-6 at 133).

The plaintiff does not assert that it is a named insured under the Policy. It argues, however, that its status as an additional insured is a "question of fact" that cannot be resolved at this juncture. (Doc. 31 at 6). The plaintiff suggests that the title of the additional insured endorsement introduces an ambiguity precluding pre-discovery resolution, but there is no such ambiguity. The heading of the endorsement reads: "Additional Insured – Managers or Lessors of Premises." (Doc. 1-6 at 133). The plaintiff assumes that, because the endorsement addresses lessors, and because it is the lessor of the Property, it is therefore an additional insured. In a word, no. The heading of the endorsement simply identifies the endorsement's subject matter, not its substance. The endorsement itself expressly limits additional insured status to "the person(s) or organization(s) shown in the Schedule," (*id*.), and the only person or organization shown in the Schedule is Bang.

 Count II does not reference the Certificate, but both parties address its impact on Count II. The Certificate identifies the plaintiff as "Certificate holder" and states, "Certificate holder is named as additional insured." (Doc. 29-1 at 2). The plaintiff argues that this language establishes the plaintiff as an additional insured. (Doc. 31 at 8). Nationwide counters that, under both California and Alabama law, a certificate of insurance cannot confer contractual rights and that, in the event of conflict between a policy and a certificate of insurance, the policy governs. (Doc. 29 at 11-12). Nationwide points also to language in the Certificate that it "confers no rights upon the certificate holder," "does not … amend, extend or alter the coverage afforded" by the Policy, and "does not constitute a contract between the issuing insurer(s) … and the certificate holder." (Doc. 29-1 at 2).

6

"[U]nder California law, a certificate of insurance cannot amend an insurance policy." *Carolina Casualty Insurance Co. v. Estate of Fuentes*, 433 Fed. Appx. 608, 610 (9th Cir. 2011). A certificate of insurance "does not create additional rights or obligations beyond the policy." *Molinar v. 21st Century Insurance Co*., 318 Cal. Rptr. 3d 608, 615 (Cal. Ct. App. 2024). "A certificate of insurance is merely evidence that a policy has been issued [and] is not a contract between the insurer and the certificate holder." *Empire Fire & Marine Insurance Co. v. Bell*, 64 Cal. Rptr. 2d 749, 757 n.25 (Cal. Ct. App. 1997). These principles have been applied in the specific context of a lessor's claim that a certificate of insurance "evidence[d] its status as an additional insured" even though the policy itself did not do so. *Bita Trading, Inc. v. Nationwide Mutual Insurance Co*., 2014 WL 51280 at *4 (S.D. Calif. 2014) (a certificate of insurance "confers no rights to [the lessor] that are not contained in the [lessee's] policy"). Other than denying that California law governs, the plaintiff has no answer to these authorities. (Doc. 31 at 4).

Under Alabama law, "[a] certificate of insurance is not part of the policy – if it states there is coverage but the policy does not, the policy controls." *Alabama Electric Cooperative, Inc. v. Bailey's Construction Co*., 950 So. 2d 280, 285 (Ala. 2006) (internal quotes omitted); *accord Catlin Syndicate Limited v. Ramuji, LLC*, 2017 WL 3581722 at *11 (N.D. Ala. 2017) ("[T]he policy controls when a conflict as to coverage exists between a policy and a certificate of insurance ...."). Alabama law "prohibit[s] the modification of an insurance policy through the issuance of a certificate of insurance." *St. Paul Fire & Marine Insurance Co. v. Newman*, 2000 WL 1367980 at *8 (S.D. Ala. 2000). The plaintiff, which insists that Alabama law governs Count II, does not respond to Nationwide's discussion of these authorities.[3]

The plaintiff's brief introduces another document into the discussion. An email

---

[3] The plaintiff does scoff that Nationwide relies on the quoted "boilerplate waiver" language in the Certificate. (Doc. 31 at 5). Nationwide's position, however, does not depend on this language but on the law of California and Alabama that the language accurately captures.

from the broker to the lessee, enclosing "a binder showing the coverages," states that "[t]his should work for your lessor …." (Doc. 31-2 at 1).[4]  The plaintiff argues that the broker's quoted statement constitutes the broker's "confirm[ation],", on behalf of Nationwide, "that the policy confirms [sic] to the Lessor's requirements as set out in the Lease Agreement," including (the plaintiff says) the requirement that the plaintiff be named as an additional insured. (Doc. 31 at 6-7).  The plaintiff believes that the email thus "confirm[s]" that the plaintiff "was an additional insured under the policy," (*id*. at 8), and that the binder itself "affirmatively represented" that the plaintiff was an additional insured. (*Id*. at 7).  The plaintiff offers no legal authority or analysis supporting its somewhat muddled position.

To the extent the plaintiff claims that the broker's statement shows that the binder in fact identified the plaintiff as an additional insured,[5] Nationwide responds that contractual terms different from those of the policy cannot be imposed by a binder any more than by a certificate of insurance. (Doc. 32 at 11).  This appears to be correct, at least once the policy issues.

"The law does not allow a single insurance binder to dictate coverage beyond the issuance of the actual policy."  *H/C Co. v. Zurich American Insurance*, 1995 WL 601031 at *3 (N.D. Cal. 1995).  "[A] binder is an independent contract, separate and distinct from the permanent insurance policy."  *Ahern v. Dillenback*, 1 Cal. Rptr. 2d 339, 346 (Cal. Ct. App. 1991).  Binders are by definition temporary, expiring when an application is rejected, or a policy is issued, or at a time dictated by statute.  *H/C*, 1995 WL 601031 at *3; *Ahern*, 1 Cal. Rptr. 2d at 345-46; *Chang v. Farmers Insurance Co*., 2023 WL 4041370 at *6 (Cal. Ct. App. 2023).  "At that moment, the binder bec[omes] invalid," *H/C*, 1995 WL 601031 at *3, and the parties' relationship is governed by the terms of the policy and not by those of the binder.  *Chang*, 2023 WL 4041370 at *6 (where the binder

---

[4] Neither side objects to the Court's consideration of this document without converting Nationwide's motion into one for summary judgment.

[5] The binder is not before the Court.

identified the insurer as "Farmers Insurance" and the policy identified the insurer as "Fire Insurance Exchange," once the binder expired the plaintiffs had no contract claim against Farmers Insurance).

As in California, so in Alabama.  "[A] binder [i]s a written contract [that] acts as temporary insurance … that insures the applicant during the insurance company's investigation of insurability."  *Custer v. Homeside Lending, Inc*., 858 So.2d 233, 237 n.4 (Ala. 2003) (internal quotes omitted).  The protection provided by the binder ends upon issuance or delivery of the policy.  *Montz v. Mead & Charles, Inc*., 557 So. 2d 1, 3 (Ala. 1987); *National Life & Accident Insurance Co. v. Claytor*, 48 So. 2d 180, 183 (Ala. 1950).  Against this background, "it is hornbook insurance law that a binder merges into the subsequently issued policy so that the terms and conditions of the policy, in case of conflict or ambiguity, are controlling."  *King v. Allstate Insurance Co*., 906 F.2d 1537, 1541 (11th Cir. 1990) (internal quotes omitted).[6]

To the extent the plaintiff argues that the broker's statement shows that the Policy in fact identified the plaintiff as an additional insured, that is not possible, both because the Policy did not exist when the statement was made, and because the Policy's terms are what the Policy says they are, not what a third party describes them as being.

To the extent the plaintiff argues that the broker's statement constitutes a representation that the binder did, or that the Policy would, identify the plaintiff as an additional insured, the allegation may or may not support a misrepresentation claim, but it is irrelevant to the plaintiff's breach of contract claim.

In summary, Nationwide's motion for judgment on the pleadings as to Count II is due to be granted.

---

[6] Certain jurisdictions appear to allow a binder to create an ambiguity in the policy, while others may require a policy to conform to the binder in some situations.  Because the plaintiff does not argue that Alabama and/or California do or would follow such a rule, the Court need not consider it.

### III.  Negligence/Wantonness.

Count IV identifies several related duties owed the plaintiff by Nationwide and/or Farudi, but only one way in which they were breached:  "by causing the insurance proceeds to be paid to [the Farudi defendants] despite [the plaintiff] being named insured and certificate holder on the policy."  (Doc. 1-2 at 14).  As explained in Part II, the plaintiff was neither a named insured nor an additional insured under the Policy, and the plaintiff's status as a certificate holder, without being a named or additional insured, gives it no right to insurance proceeds.  "In Alabama, recovery of proceeds under an insurance policy is typically limited to the named insureds who are a party to the insurance contract."  *Catlin Syndicate*, 2017 WL 3581722 at *4.  While a policy may identify non-insureds that may receive proceeds, *id*. at *5, the Policy does not identify the plaintiff as a potential recipient of proceeds, and "the mere fact that [the plaintiff] is a [lessor] of or has an interest in the <u>property</u> does not meant [sic] that it has any legally recognized and direct contractual interest in the <u>Policy</u>."  *Id*. (emphasis in original).  Because the plaintiff had no right under the Policy to the proceeds as a named or additional insured, and because the Certificate could not grant such a right, Nationwide could not have breached a duty to the plaintiff as alleged in the complaint.

Nationwide argues that, even if the plaintiff had a legitimate right to the proceeds, Count III asserts a cause of action for negligent or wanton handling of an insurance claim, which is a cause of action Alabama law does not recognize.  (Doc. 29 at 13-14).  "[T]his Court has consistently refused to recognize a cause of action for the negligent handling of insurance claims, and it will not recognize a cause of action for alleged wanton handling of insurance claims."  *Kervin v. Southern Guaranty Insurance Co.*, 667 So. 2d 704, 706 (Ala. 1995).  The plaintiff denies neither that its claim is one for negligent/wanton handling of an insurance claim nor that such a claim does not exist under Alabama law.[7]

---

[7] The plaintiff also does not dispute that Alabama law governs its tort claims.  (Doc. 29 at 5-6).

In summary, Nationwide's motion for judgment on the pleadings as to Count IV is due to be granted.

## IV. Conspiracy to Defraud.

"Liability for civil conspiracy rests upon the existence of an underlying wrong[,] and if the underlying wrong provides no cause of action, then neither does the conspiracy." *Flying J Fish Farm v. Peoples Bank*, 12 So. 3d 1185, 1196 (Ala. 2008) (internal quotes omitted).  Nationwide argues that the only "underlying wrong" asserted is its distribution of insurance proceeds to its insured rather than to a non-insured, which it says is not a wrong at all.  (Doc. 29 at 15).  Nationwide is correct that, as discussed in Parts I and II, it had no contractual duty to pay proceeds to the plaintiff.  But that Nationwide may have had no legal obligation to ensure that the plaintiff received the insurance proceeds does not mean that the Farudi defendants had no such obligation.  Count III alleges that Farudi defrauded the plaintiff by filing a claim and receiving insurance proceeds that were not properly remitted to the plaintiff and not used as Farudi represented they would be (to repair the damage to the Property).  (Doc. 1-2 at 13).  Such fraud is obviously an "underlying wrong," and Nationwide has neither demonstrated that the fraud claim against Farudi is non-viable nor shown any bar to its being held liable for conspiring to commit such fraud.[8]

Nationwide also asserts that Count VI does not satisfy Rule 9(b).  (Doc. 29 at 15-16).  "[W]here a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiffs must plead this act with specificity." *American United Life Insurance Co. v. Martinez*, 480 F.3d 1043, 1067-68 (11th Cir. 2007).  The Court agrees that Count VI – the substantive part of which consists of a single sentence barely three lines long – is not pleaded with the requisite specificity. *See generally Crawford's Auto Center, Inc. v.*

---

[8] The plaintiff mis-identifies the underlying wrong as misrepresentations by Nationwide that the plaintiff was an additional insured.  (Doc. 31 at 8).  Not only is that not the underlying wrong alleged in Count VI, it is not a wrong alleged anywhere in the complaint.

*State Farm Mutual Automobile Insurance Co.*, 945 F.3d 1150, 1159 (11ᵗʰ Cir. 2019) (identifying aspects of proper pleading under Rule 9(b)).

In summary, Nationwide's motion for judgment on the pleadings as to Count VI is due to be granted.

## V.  Leave to Amend.

In its reply brief, Nationwide requests dismissal "with prejudice and without leave to amend" and devotes over three pages to explaining why the plaintiff should be denied leave to amend.  (Doc. 32 at 9-13).  This approach deprived the plaintiff of an opportunity to knowingly respond.[9]  As this Court has often ruled, it and other courts "ordinarily do not consider arguments raised for the first time on reply," and will not do so as to any non-jurisdictional argument unless "the offending party articulates an adequate reason for its failure to present in its principal brief an argument then available to it."  *Parker v. Exterior Restorations, Inc*., 653 F. Supp. 3d 1105, 1108 (S.D. Ala. 2023) (internal quotes omitted).  Nationwide articulates no such reason, and the Court declines to vary from its usual rule.  The Court does pause, however, to remind the parties of the general rules regarding amendment of a complaint following a successful motion to dismiss.

"[A] dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits even where the district court does not state whether the claims were dismissed with or without prejudice."  *Beach Blitz Co. v. City of Miami Beach*, 13 F.4ᵗʰ 1289, 1299 (11ᵗʰ Cir. 2021) (internal quotes omitted).  "A dismissal for failure to state a claim … is on the merits and with prejudice."  *White v. Lemma*, 947 F.3d 1373, 1377 (11ᵗʰ Cir. 2020).  Because the standard for motions under Rule 12(c) is the

---

[9] In its principal brief, Nationwide summarily, and without explanation or support, requested dismissal "without leave to amend."  (Doc. 29 at 16).  However, "a passing reference to an issue in a brief [i]s insufficient to properly raise that issue."  *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11ᵗʰ Cir. 2005).

same as for those under Rule 12(b)(6), the Court's grant of Nationwide's motion for judgment on the pleadings necessarily results in dismissal with prejudice.

However, a dismissal with prejudice does not necessarily mean a dismissal without leave to amend.  Some complaints fail to state a claim for incurable reasons and so are not amenable to salvage by amendment.  In this case, Count I fails to state a contract claim for the incurable reason that Nationwide is not a party to the Lease and so cannot be liable for breaching the Lease.  Count II fails to state a contract claim for the incurable reasons that the Policy unambiguously excludes the plaintiff as a named or additional insured and that the Certificate, the binder, and the broker's email are incapable either of altering or overriding the Policy's terms or of constituting enforceable contracts of their own.  Count IV fails to state a claim of negligent or wanton handling of an insurance claim for the incurable reason that Alabama refuses to recognize any such cause of action.  Whether or not leave to amend were expressly precluded by this order, any effort by the plaintiff to resurrect these claims would necessarily fail.

Other dismissals for failure to state a claim may rest on problems potentially curable by amendment.  Pleading deficiencies under Rules 8(a) and 9(b) are the most obvious examples.  Count VI, which is being dismissed for failing to satisfy Rule 9(b), falls in this category.  Because such deficiencies are amenable to correction, it is generally appropriate to allow a chance to correct them.  Thus, "dismissal for failure to comply with Rule 9(b) is almost always with leave to amend."  *Summer v. Land & Leisure, Inc*., 664 F.2d 965, 971 (old 5th Cir. 1981).

In former times, this bias towards leave to amend with respect to correctible deficiencies hardened into an iron rule:  "Where a more carefully drafted complaint might state a claim, a plaintiff *must* be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."  *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (emphasis added).  The Eleventh Circuit eventually recognized a perverse consequence of this rule.  Under the *Bank* regime, a plaintiff could, without seeking leave to amend, obtain a guaranteed successful appeal of a final judgment:  either it won on the merits of the appeal and obtained remand to pursue its original case, or it won on the lack

of an amended complaint and obtained remand to pursue one. *Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 543 (11th Cir. 2002) (en banc). The *Wagner* Court overruled *Bank* and "substitute[d] the following rule: A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Id.* at 542. Because the grant of Nationwide's motion for judgment on the pleadings will not result in a final judgment,[10] *Wagner* does not operate to foreclose the plaintiff's presumptive opportunity to amend Count VI so as to satisfy Rule 9(b). Nationwide does not argue otherwise.

"Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should … be resolved before discovery begins." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1308-09 (11th Cir. 2020) (internal quotes omitted). That is not possible here, because Nationwide, rather than filing a motion to dismiss under Rule 12(b)(6) before filing its answer, instead filed a motion for judgment on the pleadings under Rule 12(c) some five months after the discovery period opened. Nevertheless, in recognition of the preference for resolving threshold issues earlier rather than later, the Court will require the plaintiff to file and serve promptly any amended complaint attempting to satisfy Rule 9(b) with respect to Count VI.

The Court has spoken thus far of amendments offered to salvage claims already pleaded. The plaintiff also may seek leave to add new claims or to enlarge its civil conspiracy claim. Indeed, the plaintiff has suggested amendments to expand the actionable wrongs under the conspiracy claim and to assert against Nationwide new claims of misrepresentation, fraud, negligence/wantonness,[11] and bad faith. (Doc. 31 at

---

[10] The claims against Farudi remain pending, and Nationwide has not sought final judgment pursuant to Rule 54(b).

[11] That the plaintiff cannot bring a claim for negligent or wanton handling of an insurance claim does not of itself demonstrate that no other claim of negligence or wantonness against Nationwide is possible.

5, 8).  Until the Rule 16(b) scheduling order's deadline for seeking such leave passes, the plaintiff is not subject to its "good cause" standard for obtaining leave to amend but is subject only to the more lenient standard of Rule 15(a)(2).  *E.g., 68V BTR Holdings, LLC v. City of Fairhope*, 2023 WL 7496213 at *1 (S.D. Ala. 2023).

The plaintiff has announced its intention to seek leave to amend the complaint. (Doc. 31 at 8).  Its announcement places nothing before the Court.  "To properly request leave to amend, a plaintiff must satisfy two requirements:  (1) file a motion for leave to amend and (2) either set forth the substance of the proposed amendment or attach a copy of the proposed amendment."  *Advance Trust & Life Escrow Services, LTA v. Protective Life Insurance Co*., 93 F.4th 1315, 1336 (11th Cir. 2024) (internal quotes omitted).  A "request for leave to amend … embedded in [an] opposition brief [is] not properly before the district court," *id*., and the plaintiff has not even requested such leave.

Nevertheless, Nationwide asks the Court to rule in advance that any proposed amendment offered under Rule 15(a)(2) would be barred due to futility and undue delay. (Doc. 32 at 10-13).  Nationwide's argument assumes for the most part that the plaintiff's amendments would be for the purpose of resurrecting Counts I, II, and IV.  As addressed above, no amendment could resurrect those claims, because they suffer from incurable deficiencies.

As also discussed above, however, the plaintiff has signaled an intent to assert new claims and to expand the underlying wrongs under Count VI.  While the plaintiff has generally described the basis of a misrepresentation claim, it has not set forth the substance and, as to possible additional causes of action, it has done little more than list them by name.  Under *Advance Trust*, there is nothing properly before the Court for decision. Likewise, there is insufficient information about the possible claims before the Court to allow for a decision.  Nationwide's peremptory strike is thus premature.[12]

---

[12] It is also inadequately supported.  Nationwide argues, for example, that any amendment should be barred for "undue delay," but it fails to address either the governing principles or this Court's synopsis that "[t]he Eleventh Circuit cases upholding denials of leave to amend based on undue delay in moving to amend involve delays measured in years and/or

The Court has and expresses no opinion as to whether or to what extent the plaintiff would be granted leave to amend were it to properly move for such relief.  The Court states only that neither the plaintiff nor Nationwide has properly placed that question before it.

## CONCLUSION

For the reasons set forth above, Nationwide's motion for judgment on the pleadings is **granted**.  All claims asserted in the complaint against Nationwide are **dismissed with prejudice**.  The plaintiff is granted leave to file and serve, on or before **September 30, 2024**, an amended complaint correcting the noted deficiencies in Count VI.[13]  No other amendment will be considered except upon a proper motion for leave to amend.  To the extent that Nationwide seeks additional or different relief, its motion is **denied**.

DONE and ORDERED this 9th day of September, 2024.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

extending beyond key deadlines," the earliest of which is the deadline for seeking leave to amend the pleadings.  *Parker v. Exterior Restorations, Inc*., 601 F. Supp. 3d 1221, 1227 & n.4 (S.D. Ala. 2022).

[13] The Court anticipates that the parties will confer and agree on the identity and name of this defendant to be used in any amended complaint.