IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CARLA G. MATTSON AND JAMES E. MATTSON TRUST, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION 23-0474-WS-MU ) |
| RAHMEEN FARUDI, et al., | ) ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the motion of defendant Scottsdale Insurance Company ("Scottsdale") for judgment on the pleadings. (Doc. 37). The plaintiff has filed a response and Scottsdale a reply, (Docs. 39, 40), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be granted.

## BACKGROUND

According to the amended complaint, (Doc. 34), the plaintiff is the owner of certain real property ("the Property") in Fruitdale, Alabama, which it leased to several other defendants (collectively, "Farudi" or "the Farudi defendants"). The lease ("the Lease") required Farudi to maintain property insurance and to designate the plaintiff as an additional named insured. Farudi bound through Scottsdale a policy of property damage insurance ("the Policy"). Although Scottsdale was aware of the Lease's requirements, it intentionally did not issue a policy endorsement naming the plaintiff as an additional insured. Instead, Scottsdale provided a binder to Farudi with an accompanying email stating that "[t]his should work for your lessor"; Scottsdale also issued a certificate of insurance ("COI") identifying the plaintiff as an additional insured. The Property then experienced catastrophic damage in a weather event. Farudi submitted

a claim, which Scottsdale honored, paying proceeds only to Farudi, not to the plaintiff. Farudi pocketed most of the insurance proceeds without making proper repairs to the Property.

In addition to claims against the Farudi defendants, the original complaint alleged that Scottsdale: breached the Lease (Count I); breached an express or implied warranty under the Policy to remit insurance proceeds to the plaintiff (Count II); negligently or wantonly breached a duty to the plaintiff by paying proceeds to Farudi rather than to the plaintiff (Count III); and conspired with the Farudi defendants to defraud the plaintiff (Count VI). (Doc. 1-2 at 12-15). The Court granted Scottsdale's motion for judgment on the pleadings as to all counts. (Doc. 33). As to Count VI (which was dismissed for failure to comply with Rule 9(b)), the dismissal was with leave to file an amended complaint. (*Id*. at 16). As against Scottsdale, the amended complaint asserts only Count VI.

## DISCUSSION

"A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Samara v. Taylor*, 38 F.4th 141, 152 (11th Cir. 2022) (internal quotes omitted). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. District Attorney's Office*, 592 F.3d 1237, 1255 (11th Cir. 2010) (internal quotes omitted).

Attached to the amended complaint are: (1) the Lease; (2) an email string; (3) the COI; and (4) an "evidence of property insurance." (Doc. 34-1). These documents are "a part of the pleadings for all purposes." Fed. R. Civ. P. 10(c).

Attached to Scottsdale's principal brief are: (1) a binder and cover message, (Doc. 37-1); and (2) a proposal of insurance. (Doc. 37-2). Scottsdale argues that the Court may consider these documents without converting its motion into one for summary judgment. (Doc. 37 at 5-6). The Court may do so if the documents are both "central to the plaintiff's claim" and "undisputed." *Day v. Taylor*, 400 F.3d 1271, 1276 (11th Cir. 2005).

2

A document is central when it is "a necessary part of [the plaintiff's] effort to make out a claim." *Id*. A document is undisputed when "the authenticity of the document is not challenged." *Id*.

The plaintiff does not challenge the authenticity of the documents, so they are "undisputed" for purposes of *Day*. As to centrality, however, the amended complaint does not reference either the binder or the proposal. It relies on an email string in which a "binder" is mentioned and apparently attached, but it is the email message itself that forms the alleged misrepresentation, not the binder. (*Id*.). Scottsdale has failed to demonstrate that the document identified in the email as a "binder" is a necessary part of the plaintiff's effort to make out a claim or is in any other legally relevant sense central to the plaintiff's claim.

Nor has Scottsdale demonstrated, under the governing standard, that either of its two documents is the "binder" mentioned in the email string. Scottsdale argues that its document entitled "binder" postdates the email string and therefore cannot be the binder referenced in the string. It then nominates the proposal for insurance as "presumably" the document referenced in the email string, based only on its date being several weeks before the email. (Doc. 37 at 4). This guess, reasonable as it may (or may not) be, constitutes neither a pleaded fact nor a judicially noticeable fact.

Both because they have not been shown to meet the *Day* standard and because, even if considered, they have not been shown to properly establish the identity of the "binder" referenced in the email string, Scottsdale's proposed documents will not be considered in resolving the instant motion.

Count VI is styled as a claim for "conspiracy to commit fraud." (Doc 34 at 8). Although the body of Count VI is somewhat inconsistent in its description of the conspiracy,[1] the plaintiff in brief identifies it as a "conspir[acy] to misrepresent to the

---

[1] The defendants "conspired to file and have approved an insurance claim for damages," or they "conspired to generate a [COI] which stated [the plaintiff] was an additional insured," or they "conspired to disperse the insurance proceeds for the damage to [the plaintiff's] property to the Farudi Defendants only." (Doc. 34 at 8-9).

3

Plaintiff that it was an additional insured." (Doc. 39 at 5). "Liability for civil conspiracy rests upon the existence of an underlying wrong[,] and if the underlying wrong provides no cause of action, then neither does the conspiracy." *Flying J Fish Farm v. Peoples Bank*, 12 So. 3d 1185, 1196 (Ala. 2008) (internal quotes omitted). The underlying wrong alleged here is a fraudulent misrepresentation that the plaintiff was an additional insured.[2] Scottsdale argues that the amended complaint does not support a cause of action for fraud (and thus does not support a cause of action for conspiracy to defraud) primarily because, as a matter of law, the plaintiff could not have reasonably relied on a representation that it was an additional insured. (Doc. 37 at 9-13).[3]

As explained in the Court's previous order, as a matter of law the plaintiff is not an additional insured under the Policy. (Doc. 33 at 5-9). The amended complaint alleges that the defendants nevertheless twice misrepresented that the plaintiff was an additional insured: once in the COI and once in the email accompanying the "binder." (Doc. 34 at 8-9).[4]

In *Alabama Electric Cooperative, Inc. v. Bailey's Construction Co.*, 950 So. 2d 280 (Ala. 2006), the defendant's agent sent to the plaintiff certain certificates of insurance that listed the plaintiff as an additional insured. *Id*. at 282. In upholding a defense summary judgment, the Alabama Supreme Court found "persuasive" an opinion ("*Sedgwick*") concluding that one "claiming to be an additional 'insured' under the policy

---

[2] In an abundance of caution, Scottsdale addresses breach of contract (the Lease) as a potential underlying wrong. (Doc. 37 at 8-9). No such allegation appears in the amended complaint, and the plaintiff in its brief does not attempt to assert it as an additional underlying wrong.

[3] "The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." *Brickhouse Capital, LLC v. Coastal Cryo AL, LLC*, 393 So. 3d 467, 473 (Ala. 2023) (emphasis and internal quotes omitted).

[4] Scottsdale argues that it cannot be responsible for any misrepresentations contained in these documents, on the grounds that they were made by an agent of Farudi, not by Scottsdale. (Doc. 37 at 11; Doc. 40 at 3). Because Count VI alleges that Farudi and Scottsdale conspired to make the misrepresentations, it is immaterial whether they trace to Farudi or to Scottsdale.

should be held to the same obligation as a named insured to review a policy of insurance on which it seeks to rely, and its reliance solely on the agent's certificate of insurance is not reasonable under the circumstances presented by the admissible evidence[, which did not indicate that the putative additional insured] would have been unable to obtain and read the insurance policy in issue." *Id*. at 285 (internal quotes omitted). The *Bailey* Court also found persuasive a secondary authority stating that, "[w]here an entity requires another to procure insurance naming it an additional insured, that party should not rely on a mere certificate of insurance, but should insist on a copy of the policy." *Id*. (internal quotes omitted).

The plaintiff and Scottsdale agree that *Bailey* stands for the proposition that "a party claiming to be an additional insured cannot rely on a certificate of insurance *alone* as proof of coverage." (Doc. 37 at 9 (emphasis added); Doc. 39 at 7).[5] The plaintiff argues that *Bailey* is not controlling because it is not relying on the COI "alone" but also on the email. (*Id*.).[6]

The insurance agent emailed a representative of Farudi, under the heading, "Binder For Property, Liability, Auto, Umbrella," the following message:

> Mike -
> Here is a binder showing the coverages above in subject line (doesn't include cyber & epli which we bound) with an effective date of 5/31/20. This should work for your lessor or any lienholders on your property. I will send you everything else first thing Monday morning.
> Thank you so much for the business, I look forward to continuing to work together.
> Regards,
> Chris

---

[5] Several sister courts have used this qualifier in describing *Bailey*. *Madison County v. Evanston Insurance Co.*, 340 F. Supp. 3d 1232, 1287 (N.D. Ala. 2018); *Nationwide Mutual Fire Insurance Co. v. D.R. Horton, Inc.*, 2016 WL 5867044 at *11 (S.D. Ala. 2016).

[6] The plaintiff additionally references unidentified "direct statements from the Farudi and Scottsdale Defendants confirming that it was insured," (Doc. 39 at 7), but, because no such statements are alleged in the amended complaint, they cannot be considered.

(Doc. 34-1 at 12-13).  Within the hour, Mike forwarded to the plaintiff, adding only, "Copy of insurance, your site and buildings are included." (*Id*. at 12).  The plaintiff swiftly responded, "Thank you." (*Id*.).

The plaintiff argues that the language, "[t]his should work for your lessor," constituted a representation that the plaintiff was an additional insured under the Policy. (Doc. 34 at 8-9; Doc. 39 at 8).  Scottsdale responds that the quoted language, even if "this" addresses or includes additional insured status,[7] constitutes only a non-actionable statement of opinion and not an actionable misrepresentation of an existing fact. (Doc. 37 at 11-12).  The cases cited by Scottsdale do not involve language remotely resembling that used in the email.  Nor has Scottsdale acknowledged that "whether a statement is an expression of an opinion or a statement of fact depends upon all the circumstances of the particular case, and the question should be left to the jury." *Thompson v. United Companies Lending Corp.*, 699 So. 2d 169, 173 (Ala. Civ. App. 1997).  Moreover, "classification of a statement as opinion rather than fact is not necessarily fatal to a fraud claim." *Thomas v. Henderson*, 297 F. Supp. 2d 1311, 1317 (S.D. Ala. 2003).

The Court, however, does agree with Scottsdale that the plaintiff could not reasonably rely on the email and could not have reasonably relied on it even had it explicitly declared that the plaintiff is an additional insured under the Policy.  "This Court has repeatedly stated that it is not ... reasonable for the insured to rely on an insurance agent's representations about an insurance policy when those representations are contradicted by language in the insurance policy itself." *Maloof v. John Hancock Life Insurance Co*., 60 So. 3d 263, 271 (Ala. 2010).  As noted, the *Bailey* Court quoted with approval the proposition that one "claiming to be an additional 'insured' under the policy should be held to the same obligation as a named insured to review a policy of insurance on which it seeks to rely ...." 950 So. 2d at 285.  *Maloof* thus applies with full force to those claiming to be additional insureds, and the COI context at issue in *Bailey* is but a

---

[7] Scottsdale did not challenge the clarity of the representation until its reply brief, (Doc. 40 at 3), which is too late. *E.g., Parker v. Exterior Restorations, Inc*., 653 F. Supp. 3d 1105, 1108 (S.D. Ala. 2023).

specific application of the general rule that an insured (including an alleged additional insured) cannot reasonably rely on representations contrary to the policy.

The "alone" qualifier on which the plaintiff seizes derives from *Sedgwick*'s statement, quoted previously, that reliance "solely on the agent's certificate of insurance is not reasonable under the circumstances." 950 So. 2d at 285 (internal quotes omitted). Those circumstances were not the absence of a second misrepresentation of additional insured status, but rather the plaintiff's apparent ability to obtain and review the policy. *Id*. Neither *Sedgwick* nor *Bailey* supports the proposition that a plaintiff may avoid *Maloof* simply by relying on both a COI and a second alleged misrepresentation; the most they indicate is that one claiming to be an additional insured may be able to reasonably rely "solely" on the COI if he is (or would have been) denied access to the policy.[8]

The plaintiff argues that, even had it reviewed the Policy, "it could not have determined that it was not an additional insured." (Doc. 39 at 8). The plaintiff is mistaken, for reasons adequately addressed in the Court's previous order. (Doc. 33 at 6).

## CONCLUSION

For the reasons set forth herein and in the Court's previous order, Scottsdale's motion for judgment on the pleadings is **granted**. This action as against Scottsdale is **dismissed with prejudice**.

DONE and ORDERED this 13th day of January, 2025.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[8] The *Bailey* Court discussed the evidence regarding the plaintiff's pursuit of the policy, 950 So. 2d at 285-86, but it ultimately declined to decide "the effect of a request for access to an insurance policy and a subsequent refusal of access." *Id*. at 286 n.2. In any event, the amended complaint alleges no such actual or inevitable refusal.