IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CARLA G. MATTSON AND JAMES E. MATTSON TRUST, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION 23-0474-WS-MU ) |
| RAHMEEN FARUDI, et al., | ) ) ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the remaining parties' cross-motions for summary judgment. (Docs. 45, 47). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 45, 47, 49-51, 53), and the motions are newly ripe for resolution. After careful consideration, the Court concludes that the plaintiff's motion is due to be denied and that the defendants' motion is due to be granted in part and denied in part.

## BACKGROUND

According to the amended complaint, (Doc. 34), the plaintiff is the owner of certain real property ("the Property") in Fruitdale, Alabama. In May 2020, the plaintiff and defendant Taruma, LLC ("Taruma") executed a lease agreement ("the Lease") regarding the Property. The individual defendant ("Farudi") was the personal obligor on the Lease. In October 2022, Taruma assigned its rights under the Lease to defendant Taruma Fruitdale, LLC ("Fruitdale"). The amended complaint refers to these three defendants collectively as "the Farudi Defendants" and appears to attribute to all of them the acts and omissions of any of them.

The Lease required Taruma to provide and maintain property insurance on the Property and to designate the plaintiff as an "also named insured." The Farudi defendants

bound a policy of insurance ("the Policy") with defendant Scottsdale Insurance Company ("Scottsdale"). The Farudi defendants and Scottsdale provided the plaintiff a certificate of insurance ("the Certificate") identifying the plaintiff as an additional insured.

While the Lease was in effect, a storm caused catastrophic damage to the Property.[1] The Farudi defendants submitted a claim, which Scottsdale honored, disbursing the proceeds to the Farudi defendants. The Farudi defendants did not use the proceeds to replace the damaged structures or make adequate repairs but instead pocketed most of the proceeds and made only piecemeal and inadequate repairs (including by reusing storm-damaged, structurally compromised materials) that did not comply with requisite building codes and that substantially devalued the Property. The plaintiff discovered the inadequate repairs in November 2022.

The amended complaint asserts the following causes of action against the specified defendants:

- Count I    breach of contract (Farudi defendants)
- Count II   breach of contract (Scottsdale)
- Count III  fraud, conversion, theft by deception, embezzlement, and unjust enrichment (Farudi defendants)
- Count IV   negligence/wantonness (Farudi defendants)
- Count V    piercing the corporate veil/alter ego (Farudi defendants)
- Count VI   conspiracy to commit fraud (Scottsdale and Farudi defendants)

(Doc. 34 at 5-9).

All claims as asserted against Scottsdale have been dismissed with prejudice by previous orders. (Docs. 33, 41). Although the style of the amended complaint, like its predecessor, names Fruitdale Pellets, LLC ("Pellets") as a fifth defendant, the Court has already ruled that the complaint alleges no cause of action against Pellets, (Doc. 10), and the amended complaint does not attempt to do so. This action as to Pellets is therefore due to be dismissed with prejudice.

---

[1] The uncontroverted evidence establishes that this event occurred in October 2020.

2

The plaintiff moves for summary judgment with respect to Counts I and IV and with respect to the fraud aspect of Count III. The Farudi defendants (hereinafter, "the defendants") move for summary judgment *in toto*.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992); Fed. R. Civ. P. 56(c)(1).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). "Therefore, the [non-movant's] version of the facts (to the extent supported by the record) controls, though that version can be supplemented by additional material cited by the [movants] and not in tension with the [non-movant's] version." *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015), *aff'd*, 633 Fed. Appx. 784 (11th Cir. 2016).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). Moreover, "a passing reference to an issue in a brief [i]s insufficient to properly raise that issue." *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005). The Court accordingly limits its review to those arguments the parties have expressly and adequately advanced.

The parties agree that Alabama law governs the issues raised by their motions. The Court therefore confines its analysis to Alabama law.

**I. Breach of Contract.**

The parties agree that the elements of a contract claim under Alabama law are: (1) a valid contract between the parties; (2) the plaintiff's performance thereunder; (3) the defendant's non-performance; and (4) resultant damages. (Doc. 45 at 7; Doc. 47 at 6). The defendants do not challenge the plaintiff's ability to establish the first two elements. They deny, however, that the plaintiff can demonstrate either a breach of the contract or any damages from such breach.

The contract at issue is the Lease, and the term at issue required Taruma, as lessee, to maintain property insurance and to "designate the Lessor as an 'also named insured'." (Doc. 45-1 at 3). The Court has by separate order ruled that the plaintiff is neither a named insured nor an additional insured under the Policy. (Doc. 33 at 5-9). The plaintiff properly relies on this ruling as demonstrating a breach of the requirement that it be so designated. (Doc. 45 at 8-9).[2] The defendants, without acknowledging either the plaintiff's argument or the Court's ruling, in a single brief paragraph advance several proposed means of defeating the element of breach. (Doc. 49 at 5).

First, the defendants argue there was no breach because Taruma added the plaintiff as a certificate holder. Taruma's obligation, however, was to have the plaintiff designated as an also named insured; as the Court's previous order explains, under governing law a certificate of insurance cannot accomplish that feat. (Doc. 33 at 6-7).

Second, the defendants assert that the plaintiff accepted the Policy, and accepted rent under the Lease, which conduct they say shows that (or at least creates a fact question regarding whether) the plaintiff either accepted Taruma's performance as satisfactory or waived the right to challenge it now. No explanation, reference to the record, citation to legal precedent, or description of governing analytical principles accompanies this *ipse dixit*, and the Court will neither speculate as to a rationale on the defendants' behalf nor go in search of reasoning, evidence, or authority to support it.

---

[2] Because the parties do not do so, the Court does not for present purposes distinguish between a named insured, an additional insured, an also named insured, and an additional named insured.

5

The plaintiff identifies its damages from Taruma's breach as stemming from inadequate repair to the Property, such that the Property fails to meet building codes and is devalued as a result. (Doc. 45 at 6). The plaintiff identifies four exhibits with which to support its assertion of damage. (*Id*. at 4, 6; Doc. 50 at 2). Exhibit 7 is a collection of photographs showing pre-repair damage to the Property from the storm. (Doc. 45-4 at 1-8). The plaintiff does not explain, and the Court does not discern, how these images could suggest a diminution in value from pre-storm state to post-repair state.

Exhibit 8 is another collection of photographs, which the plaintiff fails even to identify. (Doc. 45-4 at 9-24). Assuming for present purposes that they are pictures of the Property post-repair, without explanation and/or additional evidence (the plaintiff provides neither), they appear to show only cosmetic imperfections, not structurally compromised elements or building code violations. Moreover, the plaintiff's claimed measure of damages is the difference between the pre-storm value of the Property and its post-repair value, and without evidence of that pre-storm value, or even appearance (which the plaintiff fails to provide), it would be impossible to infer from Exhibit 8 that the Property has been devalued.

Exhibit 9 is a November 2022 email from Scottsdale saying, "Looks like we consider this [Building 5] a total loss." (Doc. 45-5 at 1). The defendants concede they did not replace Building 5 but rather repaired it. (Doc. 47-4 at 3). Assuming for argument that it reflects Scottsdale's judgment that Building 5 should be replaced (and not simply a judgment that insurance proceeds should be calculated assuming replacement), the statement might well support a reasonable inference that repair alone would not return Building 5 to its pre-storm value. It would not, however, on its own compel a reasonable jury to find diminished value. Even if it would do so, the defendants' evidence that the repair work "significantly improved" Building 5, (*id*.), would create a genuine issue of fact as to whether Building 5 has been, as the plaintiff claims, devalued.

Exhibit 11 is only a proposal to erect a metal building at a cost of $168,800. (Doc. 50-1). Assuming for argument that this building would be a replacement of Building 5

(the plaintiff offers no such evidence), the proposal cannot possibly suggest, as the plaintiff maintains, that Building 5 "will need to be replaced"; the most it reflects is an estimate of the *cost* of replacement, not the *need* to do so.

As the defendants note, the plaintiff's presentation is heavy on factual assertions by counsel and light on evidence offered to support those assertions. On a plaintiff's motion for summary judgment, evidence is indispensable. For reasons stated, the plaintiff's limited evidence of diminished property value is inadequate to meet its heavy burden on motion for summary judgment.

In support of their competing motion for summary judgment, the defendants argue that the increased rent the Property commands post-repair negates any diminished value of the Property. (Doc. 49 at 5).[3] While rent may be suggestive of a property's value, the defendants identify no authority for the unlikely proposition that it is dispositive -- especially when the rents being compared are for different moments in time, when different market and economic conditions may be in play.

The defendants next argue that the Property was not only repaired but improved. (Doc. 49 at 5-6). As noted, Exhibit 9 would appear to support a reasonable inference that repair alone would not return Building 5 to its previous value, and the defendants have not meaningfully addressed that exhibit or its implications. Nor have they shown that the minor "improvements" their single cited exhibit vaguely identifies -- "added electrical service and lights" in one building, (Doc. 47-6 at 2) -- necessarily outweigh any deficits in their repair efforts.

Finally, the defendants complain that the plaintiff has never given an estimate or itemization of claimed damages and that the plaintiff allowed Taruma to assign the leased premises in 2022 without mentioning a need for repairs. (Doc. 49 at 7). The first proposition is unsupported by any citation to the record, and neither proposition is

---

[3] Annual rent under the Lease was $42,000. (Doc. 34-1 at 2). Annual rent to Pellets under its 2023 lease is $45,000. (Doc. 47-7 at 2).

capable of negating the element of damage or demonstrating that the plaintiff is incapable of proving such damage at trial.

Farudi's contractual liability is based upon the following language found in the Lease:

> PERSONAL GUARANTEE BY LESSEE.  This Lease Agreement shall be personally guaranteed by Rahmeen Farudi (guarantor), referred to as the "Guarantor(s)", and shall unconditionally guarantee the payment of the rent along with any other financial duties or obligations.  See Bankruptcy-Insolvency cancellation clause for exception.

(Doc. 45-1 at 11).  According to the defendants, the adjective "financial" modifies the noun "obligations," such that the guaranty does not extend to Taruma's non-financial obligation to designate the plaintiff as an also named insured.  (Doc. 47 at 5-6; Doc. 49 at 7-8).  According to the plaintiff, "financial" modifies only "duties," such that the guaranty extends to all contractual obligations, not only to financial ones.  (Doc. 50 at 3; Doc. 51 at 9).  Both sides consider their reading too obvious to merit discussion beyond their respective *ipse dixits*, and neither side even identifies, much less applies, any rules of construction or other tools to determine the provision's meaning.  Because both readings appear defensible, and because the parties offer nothing with which to break the impasse, neither side is entitled to summary judgment on the issue.

## II. Fraud.

The parties agree that the elements of the plaintiff's fraud claim are:  (1) a false representation; (2) of a material existing fact; (3) reasonably relied upon by the plaintiff; and (4) resulting damages.  *Brickhouse Capital, LLC v. Coastal Cryo AL, LLC*, 393 So. 3d 467, 473 (Ala. 2023).  The plaintiff asserts that Taruma, by means of the Certificate, falsely represented that the plaintiff was an also named insured; that the plaintiff relied on the Certificate by refraining from obtaining insurance on the Property; and that it was damaged in that the Farudi defendants did not return the Property to its pre-storm value and the plaintiff received no insurance proceeds with which to do so.  (Doc. 45 at 10-11).

The defendants argue that, as a matter of Alabama law, a plaintiff claiming to be an additional insured cannot reasonably rely on a certificate of insurance identifying the plaintiff as such in contradiction of the policy. (Doc. 49 at 8). As addressed in a previous order, that is a generally accurate statement, but it is subject to a potential limitation if the plaintiff was or would have been denied access to the policy. (Doc. 41 at 4-7). Because the defendants do not address this limitation, much less rule it out in this case, they cannot obtain dismissal of the fraud claim.

The plaintiff argues that the principle stated in the preceding paragraph applies only when the defendant making the misrepresentation is the insurer or its agent. (Doc. 50 at 3-4). The plaintiff offers no support for its position, which is at best counterintuitive. There is no apparent reason to believe that, while one claiming to be an additional insured cannot reasonably rely on a certificate of insurance issued by, and received directly from, the insurer or its agent, it nevertheless *can* reasonably rely on the same certificate, issued by the same insurer or agent, if it is received directly from the named insured and only indirectly from the insurer or agent. The Court need not resolve the plaintiff's reliance argument because, for reasons stated in Part I, the plaintiff has not established a central premise of its damages theory: that the Property's value post-repair is less than it was pre-storm.

The plaintiff in its motion identifies a second fraud claim within the amended complaint: that Taruma falsely represented to the plaintiff that the insurance proceeds were used to fully repair or replace the Property. (Doc. 45 at 11). Because the plaintiff does no more than note this claim's existence, it cannot receive summary judgment in its favor.

To challenge this second fraud claim, the defendants rely on a single sentence from a witness's affidavit: "None of the Taruma defendants named in this lawsuit stole any insurance proceeds as alleged by the plaintiff." (Doc. 47-4 at 4; Doc. 47 at 7-8; Doc. 49 at 9). The defendants assume rather than demonstrate that the plaintiff's claim depends on proof they "stole" insurance proceeds. The Court cannot on the scant record before it accept this assumption. It does not appear that the plaintiff under this fraud

9

claim asserts entitlement to the insurance proceeds, or to any surplus proceeds left over after the Property is restored to its pre-storm value; rather, the claim appears to be only that the plaintiff is entitled to a return of the Property to that value.

### III. Conversion.

To defeat the conversion claim, the defendants rely on the same evidence that they "stole" no insurance proceeds. (Doc. 47 at 7-8). As their own authority reflects, one may convert property without stealing it, (*id*. at 9), and the defendants' failure to address these alternate means of accomplishing a conversion dooms their motion.

The defendants complain that the plaintiff has "offered no proof" to support its conversion claim. (Doc. 47 at 9). As noted at the outset of the Court's discussion, the initial burden lies with the defendants either to present evidence that negates an element of the plaintiff's claim or to point to material in the file demonstrating the plaintiff is incapable of supplying proof of an essential element. Until the defendants do that, the plaintiff has no obligation to do anything at all. Because the defendants have not satisfied their initial burden, their motion must fail regardless of the plaintiff's silence.[4]

### IV. Theft by Deception and Embezzlement.

The defendants' only argument is that the plaintiff "has offered no evidence" to prove these claims. (Doc. 47 at 10). As noted in Part III, this is not a winning argument on a defense motion for summary judgment.

### V. Unjust Enrichment.

The defendants' sole argument is the futile one that the plaintiff "has offered no proof" to support this claim. (Doc. 47 at 10-11).

---

[4] The defendants assert that the plaintiff has conducted no discovery, has identified no experts, and "in response to discovery requests ... has not come forward with any evidence that would substantiate any of the allegations contained in Count III." (Doc. 47 at 8). Because this is merely the defendants' *ipse dixit*, it fails to show by reference to materials on file that the plaintiff cannot meet its burden at trial.

## VI.  Negligence/Wantonness.

"A mere failure to perform a contractual obligation is not a tort."  *Gustin v. Vulcan Termite and Pest Control, Inc*., 331 So. 3d 601, 605 (Ala. 2020) (internal quotes omitted).  The defendants, relying on this proposition, seek dismissal of Count IV in its entirety.  (Doc. 47 at 11-12).  They do so without cataloguing the duties the amended complaint alleges were tortiously breached.  The Court identifies the following such duties:  (1) to add the plaintiff as an additional named insured; (2) "to see that the insurance claim filed for damage to [the Property] was proper"; and (3) "to see that [the plaintiff] was compensated for damages to [the Property], or alternatively that all proceeds were spent on the replacement and proper repair of" the Property.  (Doc. 34 at 7).  The defendants acknowledge only the first of these.  (Doc. 47 at 11).  The Court agrees that the duty to add the plaintiff as an also named insured is a duty imposed by contract[5] and that the tort claim based on failure to perform this contractual duty is barred.  However, because the defendants have not addressed the other alleged duties on which Count IV is based, the negligence and wantonness claims survive as to them.

## VII.  Piercing the Corporate Veil.

The defendants acknowledge that piercing the corporate veil is appropriate under Alabama law if the entity is inadequately capitalized, or is conceived or operated for a fraudulent purpose, or is operated as the instrumentality or alter ego of another with corporate control.  (Doc. 47 at 12).  The amended complaint alleges all three.  (Doc. 34 at 7).

To negate a basis for piercing the corporate veil, the defendants rely exclusively on testimony that Taruma "is a Nevada based LLC as a manufacturing and product development company for charcoal grilling products" that "has filed tax returns, paid employees, entered into contracts and operated a charcoal fuel and pellet factory in Fruitdale, Alabama."  (Doc. 47-4 at 2; Doc. 47 at 13).  The defendants offer no authority

---

[5] The plaintiff expressly so concedes.  (Doc. 51 at 14).

11

or explanation how such limited evidence could negate the existence of any basis for piercing the corporate veil, and the Court will not endeavor to supply the deficiency.

The defendants also insist that the plaintiff "has no proof" of, and "can offer no evidence" of, a basis for piercing the corporate veil. (*Id*.). As before, because the defendants point to no materials in the file to support this proposition, their *ipse dixit* cannot sustain their initial burden on motion for summary judgment.

**VIII. Conspiracy.**

Count VI alleges that the defendants conspired with Scottsdale to defraud the plaintiff. (Doc. 34 at 8-9). The defendants argue that the Court's dismissal of this claim as to Scottsdale compels dismissal as to them because a successful conspiracy claim requires "concerted action by two or more" actors. (Doc. 47 at 13). And so it does, but the defendants cite no authority for the improbable proposition that a plaintiff cannot prove concerted action by two conspirators if one of them is, like Scottsdale, dismissed for other reasons.

"Liability for civil conspiracy rests upon the existence of an underlying wrong[,] and if the underlying wrong provides no cause of action, then neither does the conspiracy." *Flying J Fish Farm v. Peoples Bank*, 12 So. 3d 1185, 1196 (Ala. 2008) (internal quotes omitted). The defendants argue the plaintiff cannot prove the underlying wrong of fraud because, as a matter of law, the plaintiff could not reasonably rely on the Certificate as confirming its status as an insured under the Policy. (Doc. 47 at 14). As noted in Part II, that general proposition is subject to a potential limitation if the plaintiff was or would have been denied access to the policy, and the defendants' failure to address that limitation precludes them from meeting their burden of showing the plaintiff cannot prove the reliance element of its fraud claim.[6]

---

[6] Scottsdale's successful motion was one for judgment on the pleadings, so the amended complaint's failure to allege actual or inevitable refusal of access to the Policy was fatal. (Doc. 41 at 7 & n.8). The defendants' motion, in contrast, is for summary judgment, so the question is not the adequacy of the pleading but of the evidence and briefing.

Finally, the defendants argue they should prevail simply because the plaintiff did not address the conspiracy claim in its opposition brief. (Doc. 53 at 7). In a word, no. "[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004); *accord Wappler v. Ivey*, 2024 WL 3321147 at *13 (11th Cir. 2024).

## CONCLUSION

This action was filed in October 2023. (Doc. 1-2 at 10). Almost two years later, it is clear that the parties have yet to master the case -- the causes of action and their elements, the substantive law governing their analysis, the evidence necessary and available to prove or undermine them, and the procedural requirements for doing so. Nevertheless, this action is bound for final pretrial conference in less than three weeks. The Court will deal appropriately with any party appearing at the conference without a substantially improved grasp of this case than has been thus far exhibited, or that is responsible for producing a joint pretrial document not in full compliance with the letter and spirit of the Court's standing order. (Doc. 25-1).[7]

For the reasons set forth above, the defendants' motion for summary judgment is **granted** with respect to Count IV, to the extent it is based on an alleged duty to add the plaintiff as an additional named insured, and is in all other respects **denied**. The plaintiff's motion for partial summary judgment is **denied**. This action as to Pellets is **dismissed with prejudice**.

DONE and ORDERED this 20th day of June, 2025.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[7] As of the close of discovery two months ago, the parties had produced exactly zero settlement proposals and had engaged in precisely zero settlement discussions. (Doc. 43). If that count remains accurate today, the parties are already in violation of the Court's standing order. (Doc. 25-1 at 1).